UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>CROSS COUNTRY HEALTHCARE, INC., OPTIMAL WORKFORCE SOLUTIONS, LLC and MEDICAL STAFFING NETWORK, INC.<br><br>Defendants. | Civ. No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**(Trial by Jury Demanded)** |

On behalf of herself and all others similarly situated, Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe"), through her attorneys, the Law Office of Adam G. Singer, PLLC and Francis & Mailman, P.C., respectfully alleges as follows:

## I. NATURE OF THE ACTION

1. This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), brought on behalf of applicants for employment through Defendants Cross Country Healthcare, Inc. ("CCH"), Optimal Workforce Solutions, LLC ("OWS") and Medical Staffing Network, Inc. ("MSN"). CCH describes itself as "a national leader in providing healthcare staffing, recruiting and value-added workforce solutions." CCH Annual Report 2017, at 1. CCH is traded on the NASDAQ stock exchange and had $865 million in revenue in 2017. *Id.*, at 2. Plaintiff contends that CCH, OWS and MSN systematically violate section 1681b(b)(3) of the FCRA by using consumer reports to take an adverse employment actions without, beforehand, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of rights under the FCRA, leaving the person who is the subject of the report without any meaningful opportunity to correct any errors on the report.

-2-

2. The FCRA regulates the use of "consumer reports" for employment purposes, commonly called "background reports." Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as CCH, OWS and MSN. This action involves Defendants' systematic violations of several of those important rules.

3. Plaintiff was denied employment as a patient care assistant at Westchester Medical Center based upon a standardized background screen conducted by Accutrace, Inc. ("Accutrace") pursuant to an agreement between Accutrace and Defendants whereby Accutrace performs a standardized background screen on all of Defendants' candidates for hire or promotion. Accutrace adjudicated Plaintiff as not eligible for the job based upon a twelve and a half year old offense that took place when Plaintiff was a minor, and for which Plaintiff was not convicted,[1] and which had been ordered sealed more than six years prior to Accutrace's report.

4. In violation of the FCRA, Defendants willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement and failed to provide a copy of the inaccurate background report it obtained from Accutrace, *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3). Every year, individuals who have applied for employment through CCH, OWS and MSN have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

---

[1] The FCRA, at section 1681c(a)(5), expressly excludes from consumer reports any non-conviction information more than seven years old. *See Serrano v. Sterling Systems, Inc.*, 557 F.Supp.2d 688 (E.D. Pa. 2008), cited favorably in *Haley v. TalentWise, Inc.*, 9 F.Supp.3d 1188, 1192 (W.D. Wa. 2014).

5. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for herself and a class of similarly situated employment applicants for whom Defendants failed to comply with FCRA section 1681b(b)(3)'s pre-adverse action notification requirements.

## II. PARTIES

6. Plaintiff is an adult individual residing in Mt. Vernon, New York.

7. Defendant CCH is a Delaware corporation and regularly conducts business in the Southern District of New York. CCH has headquarters at 5201 Congress Avenue, Boca Raton, FL 33487. CCH's website describes itself as follows: "As a national leader of primary healthcare staffing and workforce solutions, Cross Country healthcare assists more than 3,000 healthcare facilities in the United States and Caribbean." *See* https://www.crosscountryhealthcare.com/company-profile.

8. Defendant OWS regularly conducts business in the Southern District of New York and maintains a place of business at 100 Woods Road, Valhalla, NY 10595. OWS is a "workforce solution" utilized by CCH. *See* https://www.crosscountryhealthcare.com/optimal-workforce-solutions.

9. Defendant MSN is a Delaware corporation that regularly conducts business in the Southern District of New York, and has a principal address at 901 Yamato Road, Boca Raton, Florida 33431. MSN is described by CCH as one of its "brands." *See* https://www.crosscountryhealthcare.com/cs/cch/our-brands. MSN has offices throughout the United States. *See* www.msnhealth.com/branch-locations.

### III. JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that the claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

### IV. STATEMENT OF FACTS

**A. Defendants' Use Of Accutrace's Screening Activities**

12. Accutrace is an employment background screening company, *i.e.,* it provides "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers and employers.

13. Accutrace investigates and reviews public record and private databases and assembles and/or maintains consumer files which contained public record information concerning, among other things, the alleged criminal record history of individuals.

14. From its files, Accutrace sells consumer reports to potential employers wishing to review the criminal record history, or lack thereof, of various job applicants or employees. According to its website, Accutrace "provides a full-spectrum of domestic and international background screening and credentialing solutions for businesses and organizations of all sizes. Our full suite of screening and credentialing services range from data verification and collection to full-credentialing and proactive credentials tracking. With Accutrace you always get complete, concise, compliant and accurate reports at the right price— delivered directly to you through our user-friendly and secure web-based ordering system." *See* http://accu-trace.com/services.php#employment-screening.

15. In addition to providing background reports, on information and belief, Accutrace also provides to its employment screening customers an additional service called "adjudication." Under this service, Accutrace scores an applicant eligible or ineligible for employment based upon an adjudication "matrix" that the customer developed with Accutrace using its hiring criteria. Reports are then adjudicated by Accutrace as either meeting or not meeting the customer's requirements.

16. The adjudication service is attractive to Accutrace's customers such as Defendants who are constantly hiring and promoting in very large volumes because it provides the customer with a remote, outsourced tool to make its employment decisions rapidly.

17. Once Accutrace adjudicates an applicant as ineligible for employment on a background report (because that applicant purportedly has a criminal court record, for example) that adjudication removes an applicant from hiring consideration with Defendants.

18. Defendants will, in effect, adopt Accutrace's adjudication as their own, without any further process given to the job applicant, and take adverse action based upon that adjudication.

19. As in the case of Plaintiff, Defendants will move forward with the applications of other candidates, but not those applicants adjudicated by Accutrace as not meeting Defendants' hiring criteria.

20. Under the FCRA, any "person" using a consumer report, such as Defendants, who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action. 15 U.S.C. § 1681b(b)(3)(A); *see also Goode v. LexisNexis Risk & Info. Analytics,* 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012) (more than

one business can be a user of a single background report; "Under the FCRA, 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. § 1681a(b). Thus, defendant is a person and must comply with § 1681b(b)(3)(A).").

21. There is longstanding regulatory guidance for employers making clear their obligations and the protections afforded to job applicants under the FCRA. The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete." *See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

22. A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate or discuss the report with the prospective employer before adverse action is taken. *See* Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.").

23. Numerous courts interpreting the FCRA have found FTC opinion letters persuasive. *See*, *e.g.*, *Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial*, 537

F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 468 (5th Cir. 2006). *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting Telephone Consumer Protection Act).

24. Consistent with that purpose, federal courts have held that the prospective employer must provide the report to the consumer "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report." *Williams v. Telespectrum, Inc.*, 2006 WL 7067107 (E.D. Va. Nov. 7, 2006); *Beverly v. Wal-Mart Stores, Inc.*, 2008 WL 149032 (E.D. Va. Jan. 11, 2008) (quoting *Williams*). In *Reardon v. Closetmaid Corp.*, 2011 WL 1628041 (W.D. Pa. April 27, 2011), the court certified a class action for prospective employees who did not receive a copy of their consumer report at least five days before being notified that the employer might take adverse action.

25. The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant that he is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him or her an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect or job is lost.

26. Defendants typically do not provide job applicants with a copy of their consumer reports or a statement of their FCRA rights before taking adverse action against them based upon the information in such reports, despite being required to do so by section 1681b(b)(3)(A) of the FCRA.

27. The FCRA statutory text, the FTC opinions and the cases cited constitute significant authority that existed during the time Defendants failed to comply with the pre-adverse action requirements of 15 U.S.C. § 1681b(b)(3)(A).

**B.   The Facts Pertaining to Class Representative Plaintiff Jane Doe**

28. In or about October 2016, Plaintiff Jane Doe sought employment through CCH for a position of Patient Care Assistant with Westchester Medical Center.

29. Following an interview at Westchester Medical, Ms. Doe was sent a letter, dated October 26, 2016 and on the letterhead of OWS, that confirmed a verbal offer of employment as a Patient Care Assistant, to begin work on November 14, 2016 at an hourly wage of $16.00. The letter stated that the offer was contingent on, among other things, a "Background Screen," and that it was valid through October 27, 2016.

30. Because Ms. Doe had no criminal record, Ms. Doe relied on the job offer and called her current employer to notify them that she would relinquish her full-time schedule there and switch to a part-time per diem schedule. As a result, her hours of employment were reduced.

31. Ms. Doe signed her acceptance of the offer and returned the letter to Westchester Medical on October 27, 2016. On that same day, she met with Westchester Medical personnel, was given an explanation of job functions, taken on a tour of the facilities and introduced to staff.

32. Later that day, Ms. Doe received a telephone call from Alecia Kelly-Ormond, a human resources manager for CCH and OWS, who informed her that Westchester Medical could not go forward with her employment because of a "flag" on her background check.

33. Ms. Doe did not understand what Ms. Kelly-Ormond was referring to. Ms. Kelly-Ormond did not disclose the name of the company that had performed the background check.

34. Ms. Doe was removed from hiring consideration based upon the "flag" appearing on the background report, which adjudicated Ms. Doe as being not eligible for employment.

35. Defendants adopted Accutrace's adjudication as their own without any further process being provided to Ms. Doe and took adverse action against Plaintiff on October 27, 2016 based upon that adjudication.

36. Eight days later, on November 4, 2016, Plaintiff was mailed a letter labeled as "Preliminary Notice of Adverse Action." Plaintiff did not receive the letter until several days later.

37. The letter was dated October 28, 2016. The envelope was postmarked November 4, 2016, and bore a return address of "Accutrace, Inc., P.O. Box 624, Bryn Mawr, PA 19010."

38. The letter was written on the letterhead of MSN, with an address of 901 Yamato Rd., Suite 110, Boca Raton, FL 33431, and signed "Sincerely, Paulette Ballard, Director of Employee Relations, Medical Staffing Network." The letter also stated, "Return Service Requested, C/O Medical Staffing Network, POB 624, Bryn Mawr, PA 19010."

39. It was when she received the letter, well over a week after her telephone conversation with Ms. Kelly-Ormond, that Ms. Doe first learned that the "flag" referred to an Accutrace background report obtained by CCH, via MSN, that improperly and erroneously disclosed a record of a 2004 incident that occurred when she was a juvenile, by law not a public record, was a non-conviction and that had been ordered sealed by the City Court of Mount Vernon in September 2010.

40. By the time the October 28, 2016 letter was received by Ms. Doe, she was already denied the job at Westchester Medical based upon the consumer report that Defendants had obtained from Accutrace.

-9-

41. The negative adjudication of Plaintiff's application occurred prior to Plaintiff being notified in writing of that fact and prior to Plaintiff being provided with a copy of the report or any meaningful opportunity to dispute it. In doing so, Defendants failed to comply with the FCRA's pre-adverse action notification requirements.

42. As a direct result of Defendants' unlawful adoption and use of the Accutrace background report and Accutrace's adjudication of Ms. Doe's employment application, Ms. Doe lost the job at Westchester Medical.

43. After finally receiving the October 28, 2016 letter, which contained a copy of the Accutrace background report but was not mailed until November 4, 2016, Ms. Doe contacted Accutrace and reported the erroneous information.

44. By letter dated November 3, 2016, but not postmarked until November 10, 2016, MSN mailed Plaintiff a letter entitled "Adverse Action Notice." Plaintiff did not receive the letter until several days after it was mailed.

45. The letter was written on the letterhead of MSN, with an address of 901 Yamato Rd., Suite 110, Boca Raton, FL 33431, and signed "Sincerely, Isabel Stainshine RN, MS, Director of Standards and Quality Management, Medical Staffing Network." The letter also stated, "Return Service Requested, B/O Medical Staffing Network, POB 624, Bryn Mawr, PA 19010."

46. The November 3, 2016 letter stated "This is an adverse notice relating to your application with Medical Staffing Network. At this time Medical Staffing Network is unable to hire you based on the information included on your report."

47. When she first contacted Accutrace following receipt of the November 4, 2016 postmarked letter, Ms. Doe provided Accutrace with proof of the inaccuracies reported, and

Accutrace corrected the background report on or about November 14, 2016. The corrected report was mailed to Ms. Doe on November 21, 2016.

48. Accutrace apparently advised Defendants of the inaccuracies it had included in the report it provided concerning Ms. Doe. By letter from OWS dated November 22, 2016, Ms. Doe was advised that she would be hired as a Patient Care Assistant with a starting date of December 12, 2016 approximately one month after the original starting date she was provided.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All applicants for employment with CCH, OWS or MSN, or any subsidiary thereof, residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that was used by Defendants and/or their subsidiaries to take an adverse employment action regarding such applicant for employment, within five years prior to the filing of this action and extending through the resolution of this case, and for whom Defendants and/or their subsidiaries failed to provide the applicant a copy of his or her consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

50. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

51. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendants procure and use hundreds if not thousands of consumer reports on applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

52. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The common legal and factual

questions include, among others:

(a) Whether Defendants failed to provide each applicant for employment a copy of their consumer report at least five business days before Defendants took adverse action based upon the consumer report;

(b) Whether Defendants failed to provide each applicant for employment a copy of their written notice of FCRA rights at least five business days before Defendants took adverse action based upon the consumer report;

(c) Whether Defendants acted willfully or negligently in disregard of the rights of employment applicants by failing to permit their employees and automated systems to send employment applicants their full consumer report and a written statement of their FCRA rights at least five business days before taking adverse action based on the consumer report.

53. **Typicality. FED. R. CIV. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that she seeks for absent class members.

54. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes. Her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

55. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual

prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSE OF ACTION

### COUNT I
### Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)
### (On behalf of Plaintiff and Class)

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

57. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

58. The background reports ordered by Defendants are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

59. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report *and* a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

60. For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

61. Defendants are each a "person" that regularly uses background reports for employment purposes.

62. The FCRA requires Defendants, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

63. Defendants willfully or negligently violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Class the following before using such reports: (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and, (c) a written description of the consumer's rights under the FCRA, and thereby denied the consumers sufficient time to be able to review and dispute the report before Defendants took adverse action on their employment applications.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of actual, statutory and punitive damages for Plaintiff and the Class;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorneys' fees and costs; and,

E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Respectfully submitted,

BY: */s/ Adam G. Singer*
ADAM G. SINGER
**LAW OFFICE OF ADAM G. SINGER, PLLC**
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
T: 212.842.2428
E: asinger@adamsingerlaw.com

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS (*pro hac vice forthcoming*)
DAVID A. SEARLES (*pro hac vice forthcoming*)
Land Title Building, Suite 1902
100 South Broad Street
Philadelphia, PA 19110
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: dsearles@consumerlawfirm.com

*Attorneys for Plaintiff and the Class*

Dated: June 13, 2018